**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| MICHAEL R. D'ALESSANDRO, | : | |
| | : | |
| Petitioner, | : | Civil Action No.: 01-5713(WGB) |
| | : | |
| v. | : | |
| | : | |
| W. STANLEY NUNN, | : | **O P I N I O N** |
| Administrator, South Woods | : | |
| State Prison, and ATTORNEY | : | |
| GENERAL OF THE STATE OF | : | |
| NEW JERSEY, | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

**APPEARANCES:**

Michael R. D'Alessandro, Pro Se
#202420
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Joseph J. D'Onofrio, Jr.
Assistant Prosecutor
Morris County Prosecutor's
    Office
Records & Administration Bldg.
Third Floor
P.O. Box 900
Morristown, NJ 07963-0900

**BASSLER**, District Judge

Petitioner, Michael R. D'Alessandro ("D'Alessandro"), filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 8, 1981, Petitioner's landlord was robbed at gunpoint. The landlord owned a jewelry story in the same building as Petitioner's apartment. (Respondents' Answer, p.

10).  The landlord/victim observed a photographic line-up and picked D'Alessandro as the robber.  Petitioner was arrested in Delaware in February of 1985, after four years as a fugitive. (Resp. Answer, pp. 10-11).

In November of 1985, a jury trial was held and D'Alessandro was convicted of robbery, possession of a weapon with an unlawful purpose, terroristic threats, and criminal restraint.  On January 3, 1986, D'Alessandro was sentenced to a 15-year term of incarceration, with a 7½-year period of parole ineligibility, to be served consecutively to a previously imposed Union County sentence.  (Petitioner's Brief, ¶¶ 1-4).  Since then, D'Alessandro has filed numerous appeals, post-conviction relief motions, and habeas petitions.  Because Respondents argue that Petitioner has not exhausted all claims, the Court must review D'Alessandro's previous filings.

Direct Appeal

On April 28, 1986, D'Alessandro filed a notice of appeal to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  Assigned counsel raised the following issues on appeal:

1.  The Prosecutor's summation exceeded the bounds of propriety by infringing upon defendant's Fifth Amendment privilege.
2.  The trial court erred in denying defense counsel's motion for a mistrial based upon a discovery violation.
3.  The sentence imposed was manifestly excessive and improperly contained a parole disqualifier.

4.      The trial court erred in charging the jury on the issue of flight, thereby denying appellant a fair trial. (Raised by D'Alessandro).

5.      Defense counsel's performance prior to and during trial denied appellant the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments. (Raised by D'Alessandro).

6.      The trial court erred in permitting appellant's inculpatory statements into evidence, in violation of the Fifth and Fourteenth Amendments. (Raised by D'Alessandro).

(Pet. Br., ¶¶ 5-7). On February 8, 1988, the Appellate Division issued an opinion denying all of the above points except defense counsel's Point 3, that the sentence imposed was manifestly excessive and improperly contained a parole disqualifier. The Appellate Division remanded the case for resentencing. (Pet. Br., ¶ 8).

D'Alessandro petitioned for certification in the New Jersey Supreme Court ("Supreme Court"), raising Points 1, 2, 4, 5, and 6 (above), which the Appellate Division previously denied. The Supreme Court denied certification on May 3, 1988. (Pet. Br., ¶¶ 9-10).

On March 23, 1989, on the remand order of the Appellate Division, Petitioner was resentenced to five years of parole ineligibility on his fifteen year sentence. On December 20, 1989, the Appellate Division affirmed the resentencing. On March 7, 1990, the Supreme Court denied D'Alessandro's petition for certification on the resentencing. (Pet. Br., ¶ 12).

First Post-Conviction Relief Application ("PCRA #1")

Meanwhile, on December 5, 1988, Petitioner filed his first pro se post-conviction relief application ("PCRA").  Using D'Alessandro's own words, he raised the following two claims in his PCRA #1:

1.  Prejudicial trial judge who refused to recuse himself on motion.  Appellate Division found evidence of prejudice in the trial Judge and vacated petitioner's sentence.
2.  Ineffective trial counsel, counsel failed to investigate at all or to get enough information to make a strategic or tactical decision, for trial purposes, to pursue or not pursue petitioner's alibi defense. Petitioner presented defense counsel with an alibi, stating that at the time of the crime he was elsewhere.

(Pet. Br., ¶ 11).  On October 13, 1989, PCRA # 1 was dismissed without prejudice on stipulation of the parties, due to the deficiencies in the original pro se petition.  D'Alessandro states that he "spent the next 6 years trying to get the Public Defender to refile the petition."  (Pet. Br., ¶ 13).

First Habeas Corpus Petition

Because of his difficulties in having his public defender refile his PCRA #1, D'Alessandro states that on July 9, 1991, he filed a petition for a Writ of Habeas Corpus in the United States District Court, District of New Jersey ("District Court").  In his petition, D'Alessandro contends that he raised the same claims as in PCRA #1.  Respondents state that Petitioner made the following claims:

4

1.    Ineffective assistance of counsel during the post-conviction relief proceeding;
2.    The refusal of the trial judge to recuse himself, denying him a fair trial;
3.    Ineffective assistance of trial counsel because of a failure to investigate and present an alibi defense; and
4.    Denial of access to the state courts.

(Resp. Answer, p. 6).  On May 1, 1992, the petition was dismissed for failure to exhaust state remedies.  (Pet. Br., ¶ 14).

<u>Second/Third Post-Conviction Relief Application ("PCRA # 2 & 3")</u>

Petitioner states that on March 30, 1994, he filed a second PCRA.  Petitioner contends that PCRA # 2 was a refiling of PCRA # 1 (which he claims he could not get his public defender to file). (Pet. Br., ¶ 15).  Respondents contend that the second PCRA dealt only with jail credits.  Respondents further inform that Petitioner received counsel from the public defender's office, and that on May 6, 1994, a hearing was held in trial court.  On July 21, 1994 with the consent of the state, Petitioner's request for jail credits was granted.  (Resp. Answer, p. 3).

Meanwhile, on May 16, 1994, D'Alessandro filed a third PCRA, seeking reconsideration of his sentence and a change of custody pursuant to N.J. Court Rule 3:21-10(b).  (Pet. Br., ¶ 16; Resp. Answer, pp. 3-4).  Petitioner states that on September 23, 1994, a public defender filed a Brief in Support of Post-Conviction Relief on behalf of D'Alessandro, with regard to PCRA # 1 and # 2.  The points asserted in the Brief were:

5

1.  Defendant's motion is brought within the time provided by the court rules.
2.  The trial judge should have recused himself.
3.  Defendant was denied effective assistance of counsel due to counsel's failure to investigate and present his alibi defense.
4.  The trial court erred in charging flight.

(Pet. Br., ¶ 17).  On December 9, 1994, the trial court conducted a hearing, and on December 28, 1994, held that the PCRA was timely, but nonetheless denied the petition.  (Pet. Br., ¶ 18; Resp. Answer, p. 4).

Motion for Rehearing

On December 13, 1994, D'Alessandro filed a pro se motion for rehearing.  D'Alessandro claimed:

1.  Denial of effective assistance of PCRA counsel at the 12/9/94 hearing.
2.  The court used a procedural bar to defendant's claims.

(Pet. Br., ¶ 19).

Fourth Post-Conviction Relief Application ("PCRA # 4")

On December 16, 1994, Petitioner filed a pro se PCRA, claiming that he received an illegal sentence due to dilatory prosecutorial tactics.  (Pet. Br., ¶ 20).  Respondents state that this petition was filed on December 21, 1994, and that the sole issue raised was that the sentencing court improperly imposed a consecutive sentence.  (Resp. Answer, p. 4).

Fifth Post-Conviction Relief Application ("PCRA # 5")

Respondents state that on January 12, 1995, Petitioner filed a fifth PCRA raising the following issues:

6

> 1. Reconsideration of his sentence because of poor health, pursuant to <u>N.J.C.R.</u> 3:21-10(b); and
> 2. Improper and illegal consecutive sentence by the trial court.

(Resp. Answer, p. 4). Respondents state that this PCRA was addressed in the June 2, 1995 hearing by the trial court (see below).

<u>Petition for Emergency Relief</u>

On May 11, 1995, Petitioner filed a Rule 2:9-8 petition for emergency relief in the Appellate Division due to the fact that his motion for rehearing, PCRA # 3, and PCRA # 4 were not being addressed by the trial court. D'Alessandro states that the petition was filed, but not responded to or docketed. (Pet. Br., ¶ 21).

<u>June 2, 1995 Hearings</u>

On June 2, 1995, the trial court held hearings on the motion for rehearing, PCRA # 3, PCRA # 4 but reserved decision and refused to appoint counsel. (Pet. Br., ¶ 22). Respondents contend that on June 2, 1995, the court decided PCRA # 2, 3, and 5. Respondents add that the trial court held that Petitioner's sentence was not illegal. (Resp. Answer, p. 4). On June 14, 1995, D'Alessandro filed a Notice of Appeal to the Appellate Division. Respondents state that the appeal was based upon the trial court's ruling that the sentence imposed was not illegal. (Resp. Answer, p. 5). D'Alessandro filed motions to proceed as an indigent, for free transcripts, and for assignment of counsel.

D'Alessandro also claims that he argued on appeal that he was improperly denied counsel at the June 2, 1995 hearing. On August 14, 1995, the Appellate Division denied D'Alessandro's request for counsel and transcripts, stating that the request should have been made to the Public Defender's office. (Pet. Br., ¶ 23).

Also, on June 8, 1995, D'Alessandro filed a motion for transcripts to the trial court. He also filed an interlocutory Notice of Petition for Certification to the Supreme Court.[1] The claims in the petition were:

1. Petitioner received an illegal sentence.
2. Denial of effective assistance of counsel and failure to inquire into and investigate alibi defense.
3. Denial of counsel at the 6/2/95 PCRA hearing.

(Pet. Br., ¶¶ 24-25). On August 25, 1995, D'Alessandro sent a letter along with a copy of the Appellate Division's order of August 14, 1995 to the Public Defender's office, requesting counsel and transcripts of the June 2, 1995 PCRA hearings. He did not receive a response. (Pet. Br., ¶ 26). On September 11, 1995, D'Alessandro sent a letter to the Chief Justice of the New Jersey Supreme Court, requesting court-appointed counsel for his petition. The matter was referred to the Public Defender's office, who Petitioner states never responded despite his numerous letters. (Pet. Br., ¶ 27). On February 27, 1996, the

---

[1] Respondents state that D'Alessandro's petition for certification to the Supreme Court was filed on December 20, 1995. (Resp. Answer, p. 5).

Petition for Certification was denied by the Supreme Court.
(Pet. Br., ¶ 28).

On August 15, 1996, the Appellate Division ordered dismissal
of D'Alessandro's previously filed notice of appeal for failure
to prosecute.  (Pet. Br., ¶ 29).  On September 17, 1998, two
years later, D'Alessandro filed a Motion for Reconsideration and
Emergency Relief in the Appellate Division to have the case
reinstated and for transcripts and counsel.  The case was
reinstated on October 30, 1998.  The court referred the case to
the Public Defender's Office for any further action to which
D'Alessandro was entitled.  (Pet. Br., ¶ 31).

On September 28, 1998, D'Alessandro filed a motion for
transcripts in the trial court.  The trial court and the public
defender agreed to provide transcripts to D'Alessandro by letters
dated November 20, 1998 and December 7, 1998, respectively.
(Pet. Br., ¶ 32).  On September 4, 1999, Petitioner filed a
motion for transcripts in the Appellate Division which was denied
on October 22, 1999.  (Pet. Br., ¶ 33).

Thereafter, on November 7, 1999, D'Alessandro filed a motion
in the Appellate Division, stating:

    1.   Appellant was denied due process and equal protection
         of the law, under the state and federal constitutions
         when he was denied counsel on the June 2, 1995 hearing.
    2.   Appellant received an unlawful consecutive sentence on
         a first offense due to prosecutorial delay and dilatory
         tactics.
    3.   Appellant has standing and/or the court has
         jurisdiction to grant appellant equitable legal relief

> petitioned for in his Rule 2:9-8 petition [the May 11, 1995 petition for emergency relief directed to the Appellate Division], still not adjudicated.
>
> 4.    Appellant was denied the effective assistance of both trial and PCRA counsel, in violation of his Constitutional rights.

(Pet. Br., ¶ 34).  On January 24, 2000, the Appellate Division issued an Order dismissing the appeal due to Petitioner's inability to pay for the transcripts.  On February 1, 2000, D'Alessandro filed a motion for reconsideration to the Appellate Division.  Petitioner states that no response to the motion was received.  On July 11, 2000, D'Alessandro again filed the motion for reconsideration, which was denied by the Appellate Division on August 14, 2000.  (Pet. Br., ¶¶ 34, 36).

D'Alessandro filed a petition for certification in the Supreme Court raising the following issues:

> 1.    Did the Appellate Division violate petitioner's constitutional rights when it dismissed his appeal due to his indigency and financial inability to provide transcripts of the June 2, 1995 hearings?
>
> 2.    Did the Appellate Division commit constitutional violations by its continual abstention from enforcing petitioner's constitutional guarantees to due process and access to the courts?
>
> 3.    Did the trial judge violate petitioner's constitutional rights by reserving its decision on petitioner's PCRA applications and by refusing to appoint counsel and respond to transcript motions?
>
> 4.    The Appellate Division's refusal to adjudicate petitioner's ineffective assistance of trial and PCRA counsel constituted a denial of due process.

(Pet. Br., ¶ 37).  On February 22, 2001, the Supreme Court denied certification.  (Pet. Br., ¶ 38).

Second Habeas Petition

During these state court proceedings, on January 29, 1997, D'Alessandro filed a second application for a writ of habeas corpus with the district court, which was dismissed for failure to exhaust state remedies (docket number 97-467).  The petition raised the following issues:

1.    Ineffective assistance of trial and PCR counsel in failing/refusing to investigate/inquire into alibi defense;
2.    Petitioner received an illegal consecutive sentence on the first offense; the sentencing court imposed a mandatory minimum term without pre-sentence investigation report; juvenile convictions obtained without the benefit of counsel were used to enhance the sentence;
3.    Petitioner was denied counsel at the June 2, 1995 PCR hearing and appellate levels;
4.    All grounds submitted in petitioner's first habeas petition (including trial judge's refusal to recuse; ineffective trial counsel; denial of a fair trial; due process/access to courts denial; prejudicial flight charge to jury; inadmissible witness testimony at trial; trial judge's violation of petitioner's fifth amendment privilege).

(Resp. Answer, p. 7).  On May 11, 1998, a petition for reargument was denied.[2]  Respondents state that on June 6, 1998, Petitioner filed a notice of appeal.  On September 28, 1998, the matter was remanded to the District Court for issuance or denial of a

_____

[2] D'Alessandro states that the following occurred after the petition for reargument was denied:  On August 31, 1999, the Third Circuit Court of Appeals affirmed the dismissal without prejudice.  (Pet. Br., ¶ 30).  On November 8, 1999, the District Court filed an order in accordance with the Third Circuit's ruling, dismissing the second habeas petition without prejudice. (Pet. Br., ¶ 35).

certificate of appealability.  On November 5, 1998, the
certificate of appealability was denied by the District Court.
(Resp. Answer, p. 7).  Meanwhile, Petitioner filed an appeal of a
habeas petition that had been consolidated with his second habeas
petition (docket number 97-1260) in the Court of Appeals for the
Third Circuit.  On October 11, 2001, after a remand from the
Third Circuit, the District Court denied Petitioner a certificate
of appealability.  (Resp. Answer, pp. 7-8).

## PETITIONER'S ARGUMENTS

Petitioner's current habeas petition was filed on December
6, 2001.  He makes the following claims:

1.   The prosecutor's summation exceeded the bounds of
     propriety [sic] by infringing upon the defendant's
     fifth amendment privilege.
2.   The trial court erred in denying defense counsel's
     motion for a mistrial based upon a discovery violation.
3.   The trial court erred in charging the jury on the issue
     of flight.
4.   Defense counsel's performance prior to and during trial
     denied the petitioner the effective assistance of
     counsel.
5.   The trial court erred in permitting petitioner's
     inculpatory statements into evidence.
6.   Petitioner was denied his Fourteenth Amendment
     protections of both due process and equal protection by
     the refusal to provide him with PCRA hearing
     transcripts for appeals and dismissal of those appeals.

(Pet., p. ii).

## DISCUSSION

## A.   Standards Governing Petitioner's Claims

Section 2254 of Title 28, United States Code, provides that
the district court "shall entertain an application for a writ of

habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The

13

Court analyzed subsection 1 as two clauses:  the "contrary to"
clause and the "unreasonable application" clause.  The Court held
that under the "contrary to" clause, "a federal court may grant
the writ if the state court arrives at a conclusion opposite to
that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme]
Court has on a set of materially indistinguishable facts."  Id.
A federal court may grant the writ under the "unreasonable
application" clause, if "the state court identifies the correct
governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  Id. at 413.  Habeas relief may not be granted
under the "unreasonable application" clause unless a state
court's application of clearly established federal law was
objectively unreasonable; an incorrect application of federal law
alone is not sufficient to warrant habeas relief.  See id. at
411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000),
cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI
Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v.
Brennan, 528 U.S. 824 (1999).  Thus, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court

14

precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's

15

factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A <u>pro</u> <u>se</u> habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

**B.   <u>Abuse of the Writ</u>**

Respondents argue that the petition should be dismissed because Petitioner, by raising new and different grounds in support of the petition, has abused the writ.  (Resp. Answer, p. 20).  Petitioner argues, in traverse, that the abuse of the writ doctrine should be relaxed in his case.  (See Traverse, p. 12).

The "abuse of the writ" doctrine, allowed a federal court to decline to hear a claim presented for the first time in a second or subsequent habeas petition.  <u>See</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 470 (1991).  An abuse of the writ was excused only if:  (1) the petitioner could establish "cause and prejudice," that is, "some objective factor external to the defense impeded counsel's efforts" to raise the claim earlier, with "actual prejudice

16

resulting from the errors of which he complains" or (2) the petitioner could demonstrate that "a fundamental miscarriage of justice would result from a failure to entertain the claim." Id. at 493-94 (citations omitted). The AEDPA, "replaced the abuse-of-the-writ doctrine articulated in McCleskey." United States v. Roberson, 194 F.3d 408, 411 (3d Cir. 1999). However, even under the abuse of the writ doctrine, "a petition filed after a previously submitted petition was dismissed without prejudice was not considered an abuse of the writ." Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997) (citations omitted)(discussing whether the circuit court must approve the filing of a second or successive petition pursuant to § 2244 if the prior petition was dismissed without prejudice). In Christy, the Third Circuit compared the abuse of the writ doctrine to § 2244 and held that when a petitioner filed a previous petition which was dismissed without prejudice for lack of exhaustion, the petitioner did not have to seek authorization from the Court of Appeals before filing a second habeas petition. See id.

In the this case, Petitioner previously filed two habeas petitions, both of which were dismissed without prejudice for failure to exhaust state remedies. Thus, according to the Third Circuit rulings in Roberson and Christy, this Court will not apply the abuse of the writ doctrine to this petition.

C.   **Exhaustion**

Respondents further argue that this petition should be dismissed for failure to exhaust state remedies. (Resp. Answer, p. 22). Respondents allege that Petitioner never presented to the New Jersey Supreme Court certain claims for relief. (Resp. Answer, p. 25).

Petitioner argues that he has exhausted all claims. Alternatively, Petitioner states that any attempts to exhaust have been obstructed by the state and are futile. Finally, he asks the court to dismiss unexhausted claims if it would not result in a fundamental and manifest injustice, but to rule on the exhausted claims. (Traverse, p. 14).

However, the issues which Respondents claim were not presented to the Supreme Court are not issues in the current habeas petition. Respondents contend that the following three issues were not presented to the state Supreme Court:

1. Petitioner was denied counsel at the appellate level;
2. Petitioner was prejudiced by the trial judge's refusal to recuse himself; and
3. Inadmissible testimony was presented during petitioner's trial.

(Resp. Answer, p. 25). Petitioner's Application for a Writ of Habeas Corpus lists the following grounds for relief:

1.   The prosecutor's summation exceeded the bounds of propriety [sic] by infringing upon the defendant's fifth amendment privilege.
2.   The trial court erred in denying defense counsel's motion for a mistrial based upon a discovery violation.

18

       3.     The trial court erred in charging the jury on the issue of flight.

       4.     Defense counsel's performance prior to and during trial denied the petitioner the effective assistance of counsel.

       5.     The trial court erred in permitting petitioner's inculpatory statements into evidence.

       6.     Petitioner was denied his Fourteenth Amendment protections of both due process and equal protection by the refusal to provide him with PCRA hearing transcripts for appeals and dismissal of those appeals.

(Pet., p. ii).

The issues which are raised in this petition, listed above, were presented to the state courts.  Issues 1 through 5 were presented to the Appellate Division and the Supreme Court during Petitioner's direct appeal.  The sixth issue involves the Petitioner's requests for transcripts of his PCRA hearing on June 2, 1995.  The record shows that Petitioner made numerous applications to the trial court and Appellate Division for copies of these transcripts.  Because it appears that the issues raised in this petition were presented to the state courts, the Court will not dismiss this petition based on exhaustion, and will decide the case on the merits.

**D.**   **<u>Prosecutor's Summation at Trial</u>**

Petitioner argues that the prosecutor's summation at trial exceeded the bounds of propriety by infringing upon his Fifth Amendment right to remain silent.  (Pet., p. 19).  The prosecutor stated in summation:

Counsel suggests that the State hasn't proven this case and we're going to go over the evidence in detail,

19

> but before I start I would like to ask you this
> rhetorical question.  How do you prove a case of
> robbery when there's one person as the victim and one
> person as the perpetrator, how do you prove a case of
> robbery if there is only going to be 2 people in the
> world that are going to know who did it.  What I am
> going to tell you about whether this case was proven is
> that the victim, person one of the 2 people said on the
> stand under oath is the same thing that he said in
> terms of identifying the picture the day after the
> incident and said, there is no doubt in my mind that
> this is the guy.  So in terms of the quantum of proof
> being sufficient there is no better proof than that
> because there are 2 people involved in an incident and
> one of them [the victim] testified to exactly what
> happened here.
>
> The other person whose [sic] involved in this
> incident is Mr. D'Alessandro and he is found many years
> later hiding under an assumed name.

(Trial Transcript, 11/14/85, at p. 70).  Defense counsel made a
motion for a mistrial based upon the prosecutor's comments.
Petitioner argues that this statement was a comment on his
failure to testify.  At sentencing, the trial court denied the
motion, holding that the prosecutor had not commented on the
failure to testify, but rather on the issue of identification and
consciousness of guilt as a result of Petitioner's fugitive
status.  The trial court noted that it had issued an instruction
to the jury on the presumption of innocence even though an
individual did not testify.  (Pet., p. 20-21; Trial Transcript,
11/14/85, at p. 127).  The Appellate Division found that
Petitioner's argument regarding summation was without merit.
(Pet. Appx., Pa 2-3).

Under United States Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

The Fifth Amendment self-incrimination clause, applicable to the States through the Fourteenth Amendment, bars prosecutors or judges from commenting on a defendant's failure to testify.  See Griffin v. California, 380 U.S. 609, 615 (1965); Lesko v. Lehman, 925 F.2d 1527, 1541 (3d Cir. 1991).  "The test for determining whether remarks are directed to a defendant's failure to testify is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'"

21

<u>Bontempo v. Fenton</u>, 692 F.2d 954, 959 (3d Cir. 1982)(quoting <u>U.S.</u> <u>v. Chaney</u>, 446 F.2d 571, 576 (3d Cir. 1971)).

In this case, the prosecutor's comments were not so offensive as to infect the entire trial, violate due process, or render his conviction unfair.  There was sufficient evidence to convict Petitioner, which was weighed by the jury.  In light of the entire trial and with the evidence against Petitioner, the Court is satisfied that the prosecutor's allegedly offensive actions did not violate Petitioner's right to a fair trial. Further, in this case, the prosecutorial remarks at issue were not so direct that the jury would necessarily take it to be a comment on Petitioner's choice not to testify.  The trial court decided, and this Court agrees that the comments were directed toward identification of the two people involved in the incident, and on the consciousness of guilt issue.

Moreover, the trial judge made clear in instructing the jury that they were the trier of facts.  The trial judge charged:

> The other category of fact over which I said you are the judges are the fact of what the testimony has been.  Now that does not have to be reconstructed for you, nobody has to, in fact nobody should tell you what the testimony was.  The attorneys can tell you what they recall or think they recall the testimony to have been, but nobody can tell you what the testimony was. You heard it at the same time everyone in the courtroom heard it.  We may have different recollection, as for example each of the attorneys did refer to the testimony of many of the witnesses.  But in doing that they are relying only on their own recollections and they could be inaccurate.  I don't mean to suggest for one minute that either of the attorneys would

deliberately try to misrepresent what a witness said
but they could be mistaken.

And if your recollection of what a witness said
differs from what either of the attorneys might have
suggested in their summations, then you would disregard
what the attorneys said the testimony was and rely on
your own recollection.

(Trial Transcript, 11/14/95 at p. 111).

Thus, even assuming that the prosecutor's remarks were
improper, the judge's instruction was clear and correct and
prevented the prosecutor's remarks from so infecting the trial
with unfairness as to make the resulting conviction a denial of
due process.

Therefore, Petitioner has failed to show a constitutional
violation, and this claim for a writ of habeas corpus will be denied.

**E.   <u>Denial of Mistrial Based Upon Discovery Violation</u>**

Petitioner argues that during jury deliberations, defense
counsel was made aware of the fact that the State had dusted a
page from a rental ledger book for fingerprints, which resulted
in negative testing.  Petitioner argues that the negative testing
was potentially exculpatory information which should have been
provided to the defense.  The trial court denied defense
counsel's motion for a mistrial.  (Pet., pp. 25-26).  The
Appellate Division found the argument lacked merit.  (Pet. Appx.,
Pa 2-3).  Petitioner now states that this failure to disclose
evidence constituted a violation under <u>Brady v. Maryland</u>, 373
U.S. 83 (1963).

Brady protects an individual's Fifth Amendment right to due process by requiring that the prosecution produce exculpatory evidence in its possession.  See id.  In order to sustain a Brady claim, three elements must be demonstrated: "(1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense."  See United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991)(citing Moore v. Illinois, 408 U.S. 786 (1972)).  The standard for materiality of the evidence withheld is the same standard from Strickland v. Washington, 466 U.S. 668, 694 (1984).  See Marshall v. Hendricks, 307 F.3d 36, 53 (3d Cir. 2002).

> The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

See Marshall v. Hendricks, 307 F.3d 36, 53 (3d Cir. 2002) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)(other citation omitted)).

In this case, Petitioner has not demonstrated how the government's alleged withholding of the rental ledger page undermined the confidence of the outcome of the trial.  A review of the record demonstrates that this case turned on credibility

24

determinations by the jury.  At trial, the prosecution submitted

evidence against Petitioner, including the testimony of the

victim of the crime and Petitioner's own statements.  The victim

testified about the incident and noted that he was familiar with

Petitioner, and identified Petitioner in court, stating that he

"had no doubt in his mind" that the Petitioner was the person who

robbed him.  (Trial Transcript, 11/12/85, at pp. 2-32).  A

detective testified that Petitioner stated that "he was very

careful and thought that he would never be found" after

apprehension as a fugitive.  The detective also testified that

Petitioner told the officer of how he avoided apprehension.

(Trial Transcript, 11/12/85, at p. 81).

     Thus, Petitioner has not demonstrated that the outcome of

his trial would have been different had the evidence of the

negative dusting of the rental page be submitted to the jury.

This ground for a writ of habeas corpus will be denied.

**F.    Flight Charge to the Jury**

     Petitioner argues that the trial judge should not have

charged the jury on the issue of flight.  (Pet., p. 31).  The

trial court charged:

> [T]here had been some testimony in this case from which
> you may infer that the defendant fled shortly after the
> alleged commission of the crime.  The defendant by his
> not guilty plea denies any flight or that the act
> constituted flight.  The question of whether a
> defendant fled after the commission of a crime is
> another question of fact for your determination.  If
> you find that the defendant, fearful that an accusation

25

would be made against him or that he would be arrested
took refuge in flight for the purpose of evading the
accusation or the arrest, then you may consider such
flight in connection with all the other evidence in the
case as an indication or proof of consciousness of
guilt.

(Trial Transcript, 11/14/85, at p. 144).  Petitioner argues that

there was not sufficient evidence of flight presented to support

warranting a charge.  (Pet., p. 40).  The Appellate Division

found that Petitioner's argument that the charge was

unconstitutional was clearly without merit.  (Pet. Appx., Pa 2-

3).

Challenges to jury instructions solely as in error under

state law do not state a claim cognizable in federal habeas

corpus proceedings.  See Engle v. Isaac, 456 U.S. 107 (1982);

Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert.

denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408,

412 (D.N.J. 1987)(Thompson, J.)("Questions concerning

instructions are normally matters of state law and are not

cognizable in federal habeas corpus review.").  The finding by

the state appeals court should be "the end of the matter of

possible error based on the measuring of the evidence against the

state law because state, not federal, courts decide these

things." Morgan v. Krenke, 232 F.3d 562, 567 (7th Cir. 2000),

cert. denied, 532 U.S. 951 (2001).

Federal courts will evaluate jury instructions in the

context of the overall charge to the jury as a component of the

26

entire trial process.  See Estelle v. McGuire, 502 U.S. 62
(1991); Cupp v. Naughten, 414 U.S. 141, 146 (1973); Henderson v.
Kibbe, 431 U.S. 145, 154 (1977); United States ex rel. Harding v.
Marks, 541 F.2d 402, 405 (3d Cir. 1976).  The court will then
determine whether the ailing instructions so infected the entire
trial so that the resulting conviction violated due process
rendering the trial fundamentally unfair.  See Estelle, 502 U.S.
at 71.  Thus, the Due Process Clause is violated only where "the
erroneous instructions have operated to lift the burden of proof
on an essential element of an offense as defined by state law."
Smith v. Horn, 120 F.3d 400, 416 (1997); see also In re Winship,
397 U.S. 358, 364 (1970) ("the Due Process Clause protects the
accused against conviction except upon proof beyond a reasonable
doubt of every fact necessary to constitute the crime with which
he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979)
(jury instructions that suggest a jury may convict without
proving each element of a crime beyond a reasonable doubt violate
the constitutional rights of the accused).

     Where such a constitutional error has occurred, it is
subject to "harmless error" analysis.  See Smith, 120 F.3d at
416-17; see also Neder v. United States, 527 U.S. 1, 8-11 (1999).
"[I]f the [federal habeas] court concludes from the record that
the error had a 'substantial and injurious effect or influence'
on the verdict, or if it is in 'grave doubt' whether that is so,

the error cannot be deemed harmless."  Id. at 418 (citing

California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a

challenged instruction:

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, ___, 124 S. Ct. 1830, 1832

(2004) (internal quotations and citations omitted).

In this case, the Court finds that the jury instructions did

not result in a fundamentally unfair trial or a violation of

Petitioner's due process rights.  Evidence at trial consisted of

various witnesses' testimony, the credibility of which was to be

weighed by the jury.  There is no indication that the jury

misapplied the challenged instruction; rather, the jury made a

credibility determination to believe the state witness'

testimony, and to find Petitioner guilty.  Even if the charge was

improper, which neither the state courts nor this Court finds,

any error would be considered harmless in that it did not have a

substantial effect on the verdict.

Thus, Petitioner has not demonstrated that the actions of

the state courts "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United

States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

## G.    **Ineffective Assistance of Counsel**

Petitioner argues that his trial counsel was ineffective, in violation of his Sixth and Fourteenth Amendment rights.  (Pet., p. 42).  Petitioner states that counsel was ineffective for the following reasons: (1) failure to adequately examine discovery caused various omissions of timely objections and summoning of witnesses whose testimony was critical to the issue of guilt or innocence; and (2) failing to present an alibi defense.  (Pet., pp. 42, 45).  Respondents argue that Petitioner has not met the requirements of Strickland v. Washington, 466 U.S. 668 (1984).

In Strickland, the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense."  Id. at 687.  In order to establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  State v. Fritz, 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466

29

U.S. at 694).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Strickland, 466 U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519 U.S. 1020 (1996).

Petitioner's arguments that his counsel was ineffective in violation of the Sixth Amendment due to the fact that counsel did not present an alibi defense and did not properly examine evidence are without merit.  Petitioner fails to show that the result of his case would have been different had an alibi defense been presented.  See Strickland, 466 U.S. at 688; Fritz, 105 N.J. 60-61.  In addition, Petitioner has not overcome the strong

presumption that counsel's actions in not presenting the alibi defense was trial strategy.  See id. at 689.

Petitioner argues that his counsel should have issued subpoenas for various law enforcement officers to testify that the Petitioner did not voluntarily make statements to the investigators during transit.  He also challenges counsel's decision not to object to the photographic array, which he says included his "mug shot."  (Pet. Br., p. 44).  However, the Court notes that pretrial hearings pursuant to Miranda and Wade were conducted by the trial court.  A review of the record demonstrates no evidence that these additional law enforcement officers had any information that would have helped Petitioner's case, or changed the result of his case.  Indeed, it is quite possible that counsel did not present these additional witnesses due to trial strategy.

Further, the trial court denied Petitioner's ineffective assistance of counsel claims in post-conviction proceedings.  (Pet., Ex. Pa31-Pa36).  The trial court stated that the fact that there was a "bare allegation" that an alibi defense was available and was not presented was not enough to show a constitutional violation, because Petitioner had not shown that the defense would have an effect on the outcome of trial (as required by the second prong of Strickland).  (Pet. Br., Ex. Pa35-Pa36).  Also, the Appellate Division denied Petitioner's ineffective assistance

31

of counsel claim as "clearly lacking in merit."  (Pet. Br., Ex.
Pa 2-3).  Petitioner has not shown, as required by 28 U.S.C. §
2254(d), that the actions of the state courts "resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States," or "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  The petition for a writ of habeas corpus, is
therefore denied.

**H.   Petitioner's Inculpatory Statements**

Petitioner argues that certain statements he allegedly made
to investigators while being transported were improperly admitted
into evidence.  A <u>Miranda</u> hearing was held before trial to
determine whether Petitioner's rights were violated.  The
investigator testified that Petitioner was administered <u>Miranda</u>
warnings.  Petitioner argues that he was not administered <u>Miranda</u>
warnings, and that he did not initiate any conversation with the
officer.  The trial court assessed the credibility of the
investigator and Petitioner, and decided to give more weight to
the testimony of the investigator.  (Transcript of Hearing,
11/7/85, at pp. 85-105).  The evidence of the statement was
admitted into evidence at trial.  The Appellate Division found

that Petitioner's argument challenging the trial court's admission was "clearly lacking in merit." (Pet. Br., Ex. Pa3).

In Miranda v. Arizona, 384 U.S. 436, 467-74 (1966), the Supreme Court held that prior to custodial interrogation, suspects must be advised of their right against self-incrimination and their right to have an attorney present during questioning. However, the Supreme Court later held that there was a difference between the actual Miranda warnings and the Constitutional right against self-incrimination that the warnings sought to secure. See Oregon v. Elstad, 470 U.S 298, 305 (1985). The Court held that law enforcement's failure to administer Miranda warnings in and of itself did not "poison" any subsequent inculpatory statement unless the statement was accompanied by "any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will." Id. at 309. Therefore, a statement may be admissible despite the absence of Miranda warnings if the statement is not the product of coercion, that is, the suspect's will has not been overborne, nor his capacity for self-determination critically impaired. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). To assess whether or not a confession absent Miranda warnings is voluntary, the court must look at the "totality of the circumstances" surrounding the confession. Id. Relevant factors in determining the "totality of the circumstances" are the length of the

33

detention, the age and intelligence of the defendant, whether the defendant was advised of his constitutional rights, the characteristics of the interrogation, and whether the defendant endured physical punishment or mental exhaustion.  See id.  If an inculpatory statement was the "fruit of the poisonous tree," that is, if it was the product of a constitutional violation, the exclusionary rule would apply.  See Brown v. Illinois, 422 U.S. 590 (1975); Wong Sun v. United States, 371 U.S. 471 (1963).

In the case at issue, the trial court held a two-day Miranda hearing and took the testimony of investigators and Petitioner. (Pet., pp. 52-53).  Essentially, this argument was a credibility determination- the petitioner stated that he did not receive Miranda warnings- the investigator testified that he did receive Miranda warnings.  This Court will not disrupt the state court finding that the investigator's testimony was more credible than Petitioner's testimony.  Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  The petition for a writ of habeas corpus, is therefore denied.

34

I.  **Refusal to Provide Transcripts**

Petitioner argues that the state courts' denials of his requests for transcripts of the post-conviction relief hearing of June 2, 1995 violated his due process and equal protection rights under the Fourteenth Amendment.  (Pet., pp. 58-61).

While an indigent criminal defendant is entitled to a copy of his criminal trial transcript at no cost in order to prosecute a direct appeal, see Griffin v. Illinois, 351 U.S. 12 (1956), due process does not mandate that a petitioner be provided a transcript for purposes of collateral attack, or to peruse it for possible errors which may be raised on collateral attack.  See United States v. MacCollom, 426 U.S. 317 (1976).  Therefore, this Court finds that this argument is without merit.

CONCLUSION

For the foregoing reasons, Petitioner's application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is hereby **DENIED**.  An appropriate Order accompanies this Opinion.

The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

                            /S/ WILLIAM G. BASSLER
                              WILLIAM G. BASSLER
                     United States Senior District Judge

Dated: 24 May 2005